UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| DIANNA RILEY<br>AND TOMMY RILEY, SR. | CIVIL ACTION |
| VERSUS | NO. 25-654 |
| NATIONAL RAILROAD<br>PASSENGER CORPORATION | SECTION: "J"(5) |

## ORDER AND REASONS

Before the Court are a *Motion to Compel Arbitration and Stay Case* **(Rec. Doc. 5)**, filed by Defendant National Railroad Passenger Corporation ("Amtrak"), and an opposition filed by Plaintiffs Dianna Riley and Tommy Riley, Sr. (Rec. Doc. 8), to which Defendant replies (Rec. Doc. 9). Having considered the motions and legal memoranda, the record, and the applicable law, the Court finds that the motion should be **GRANTED**.

## FACTS AND PROCEDURAL BACKGROUND

This litigation arises out of injuries Plaintiff Dianna Riley suffered embarking onto and disembarking from an Amtrak train. Mrs. Riley and her husband, Tommy Riley, Sr., traveled from New Orleans, Louisiana to Atlanta, Georgia. Plaintiffs purchased their tickets online. When they arrived at the New Orleans station, Plaintiffs informed Amtrak personnel that Mrs. Riley required wheelchair assistance due to preexisting medical conditions. Amtrak staff wheeled Mrs. Riley to the passenger car, placing a step stool in front of the entrance door. The personnel then informed Plaintiffs a chair lift was unavailable. With the support of Mr. Riley, Mrs.

1

Riley attempted to step up and into the passenger car. Mrs. Riley, however, lost her balance, with both knees landing on the metal train step. Thereafter, Mr. Riley entered the passenger car with Mrs. Riley's walker, and two Amtrak employees "lifted and dragged her up the steps, twisted her ankle to 'straighten it out' and pushed her onto the train". (Rec. Doc. 1 at 4 ¶ 16).

By the time of arrival in Atlanta, Mrs. Riley experienced pain and swelling in her knees. Amtrak staff in Atlanta supplied a lift for Mrs. Riley to disembark from the train, but Mrs. Riley was not supplied a requested wheelchair. From the incident, Mrs. Riley alleges to have fractured her knee, injured her hip, and exacerbated arthritis in both knees. Plaintiffs bring their action under Louisiana Civil Code Article 2315, alleging Amtrak's negligence. For Mr. Riley's part, he seeks damages for loss of consortium.

Amtrak now moves to compel arbitration due to the company's standard arbitration agreement contracted through ticket purchase. Plaintiffs oppose.

## **LEGAL STANDARD**

Arbitration agreements are governed by the Federal Arbitration Act ("FAA"). 9 U.S.C. §§ 1–16. Section 2, "the primary substantive provision of the Act," reflects "a liberal federal policy favoring arbitration agreements" and effectively creates "a body of federal substantive law of arbitrability." *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). The United States Court of Appeals for the Fifth Circuit has observed that "[i]n enacting the Federal Arbitration Act, Congress declared a national policy in favor of arbitration. Congress' clear intent, in the

Arbitration Act, was to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." *Snap-on Tools Corp. v. Mason*, 18 F.3d 1261, 1263 (5th Cir. 1994) (internal quotation omitted, cleaned up).

"The FAA requires district courts to 'compel arbitration of otherwise arbitrable claims, when a motion to compel arbitration is made.'" *Harris v. JCPenney Co., Inc.*, No. 07-9675, 2008 WL 90038, at *1 (E.D. La. Jan. 8, 2008) (quoting *Sedco, Inc. v. Petroleos Mexicanos Mexican Nat'l Oil Co.*, 767 F.2d 1140, 1147 (5th Cir. 1985)). When determining motions to compel arbitration, courts conduct a two-step inquiry. *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016). The Court first inquires whether the parties agreed to arbitrate the dispute at issue. *Id.* This inquiry consists of two subsidiary questions: "(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Webb v. Investacorp, Inc.*, 89 F.3d 252, 257–58 (5th Cir. 1996) (citation omitted).

To determine whether the parties formed a valid agreement to arbitrate, courts apply ordinary principles of state contract law. *Am. Heritage Life Ins. Co. v. Lang*, 321 F.3d 533, 537–38 (5th Cir. 2003). On the other hand, in analyzing arbitrability, courts apply federal substantive law. *Graves v. BP Am., Inc.*, 568 F.3d 221, 222 (5th Cir. 2009) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 626 (1985)). Moreover, "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of

waiver, delay, or a like defense to arbitrability." *Moses H. Cone*, 460 U.S. at 24–25.

If a court finds that there is a valid agreement to arbitrate between the parties and that the dispute in question falls within the scope of the arbitration agreement, it moves to the second step of the arbitration inquiry, assessing whether any federal statute or policy renders the claims nonarbitrable. *Washington Mut. Fin. Grp., LLC v. Bailey*, 364 F.3d 260, 263 (5th Cir. 2004) (citation omitted).

Finally, under Section 3 of the FAA, a district court must stay a lawsuit when a party demonstrates that any issue involved in the lawsuit is "referable to arbitration under an agreement in writing for such arbitration." 9 U.S.C. § 3. This provision is mandatory and demands a stay of legal proceedings "whenever the issues in a case are within the reach of an arbitration agreement." *Complaint of Hornbeck Offshore (1984) Corp.*, 981 F.2d 752, 754 (5th Cir. 1993) (citation omitted). When these circumstances are present, a district court "has no discretion under section 3 to deny the stay." *Id.*

## **DISCUSSION**

The scope of parties' dispute is the first subsidiary question of the arbitration inquiry's first step: *was there a valid agreement to arbitrate between the parties?* To the question, the Court applies ordinary principles of Louisiana contract law. *See Am. Heritage Life Ins. Co.*, 321 F.3d at 537–38. Under Louisiana law, "[a] contract is an agreement by two or more parties whereby obligations are created, modified, or extinguished." La. Civ. Code art. 1906. Four elements are required for a valid contract: (1) capacity to contract; (2) mutual consent; (3) a lawful cause; (4) and a

valid object. *Granger v. Christus Health Cent. La.*, 144 So. 3d 736, 760–61 (La. 2013) (citing La. Civ. Code arts. 1918, 1927, 1966, 1971). Where a standard-form contract is challenged, including the contents of an arbitration agreement, a court must consider whether "the contract is unenforceable, due to lack of consent or error, which vitiates consent." *Aguillard v. Auction Mgmt. Corp.*, 2004-2804 (La. 6/29/05), 908 So. 2d 1, 10–11. Put another way, an arbitration agreement may be adhesionary "when either its form, print, or unequal terms call into question the consent of the non-drafting party". *Id.*

The Louisiana Supreme Court has provided factors by which to evaluate a standard-form arbitration agreement: (1) the physical characteristics of the arbitration clause; (2) the distinguishing features of the arbitration clause; (3) the mutuality of the arbitration clause; and (4) the relative bargaining strength of the parties. *Duhon v. Activelaf, LLC*, 2016-0818 (La. 10/19/16), 411 So. 3d 605, 611. Plaintiffs contend the physical characteristics and distinguishing features of the arbitration clause, as well as the parties' relative bargaining strength, show the agreement to be adhesionary. Aside from a mention in its legal standard, however, Plaintiffs leave the mutuality factor unaddressed. The factor, moreover, favors the validity of the agreement, as arbitration applies to both parties: "Please read the Arbitration Agreement carefully because it applies mutually to You and Amtrak and requires that you resolve claims and disputes with Amtrak on an individual basis through arbitration and not by way of court or jury trial." (Rec. Doc. 5-2 at 4 ¶ 19).

Plaintiffs repeatedly describe the arbitration agreement as "concealed,"

5

"obscured," and "buried." (Rec. Doc. 8 at 1, 4, 5, 8, 9). These characterizations, however, overlook obvious physical and distinguishing features. First, before Plaintiffs could complete their ticket purchase on Amtrak.com, they had to click a checkbox confirming their review of and agreement to the carrier's terms and conditions. Not only does an unchecked box prevent a ticket purchase, but its text is also set above a light blue box on an otherwise white background. (Rec. Doc. 8-1 at 2). Further, the text contains a hyperlink to the "terms and conditions," set off by darker blue text, and immediately highlights "the binding arbitration clause". *Id.* Reproduced from Plaintiffs' opposition, the purchaser encounters the following prompt:



*Id.* The distinctive physical characteristics are further enforced when the online purchaser clicks the link to read the terms and conditions. Directly beneath the "Terms and Conditions" title, the prospective purchaser is alerted to the "binding

6

Arbitration Agreement below," with the final three words underlined, written in blue, and containing a hyperlink to the pertinent section. (Rec. Doc. 5-2 at 4). In full, this opening paragraph of the Terms and Conditions reads:

> These terms and conditions contain a binding [Arbitration Agreement below](#). Please read the Arbitration Agreement carefully because it applies mutually to You and Amtrak and requires that you resolve claims and disputes with Amtrak on an individual basis through arbitration and not by way of court or jury trial. By purchasing a ticket for travel on Amtrak, You are agreeing to these terms and conditions and agreeing to the Arbitration Agreement.

*Id.* Plaintiffs submit a different version of the above paragraph, in which "Arbitration Agreement below" is not set off in a different color, underlined, or exhibiting other physical characteristics of a hyperlink. To the extent Plaintiffs rely on a print version of the online Terms and Conditions, this Court finds the submission irrelevant for the assessment of the consent of an online Amtrak ticket purchaser. The physical characteristics on the payment screen and Terms and Conditions landing page favor the validity of the agreement.

With the opening paragraph of the Terms and Conditions providing an apparent hyperlink to the arbitration agreement itself, the prospective purchaser also encounters sufficiently distinguishing features. The arbitration agreement has a large heading and a slightly smaller subheading directly above the paragraph detailing the agreement. *Id.* at 5. Thus, the agreement itself is distinguished from the surrounding provisions. The distinguishing features, therefore, also favor the validity of the agreement.

Finally, Louisiana courts weigh the relative bargaining strength of the parties

when the contract involves a "necessary transaction," one that the non-drafting party was compelled to enter. *Aguillard*, 908 So. 2d at 17. Plaintiffs leave the necessity of the contract unaddressed. Despite their weaker bargaining position, Plainitffs' inability to alter the arbitration terms does not thereby make the contract adhesionary.

Plainly, there was a valid agreement to arbitrate. Further, as Plaintiffs do not contest, the dispute at issue—Mrs. Riley's personal injuries—falls within the scope of the arbitration agreement. In sum, parties agreed to arbitrate this dispute. And with no federal statute or policy rendering Plaintiffs' claim nonarbitrable, the two-step inquiry demands the Court to compel arbitration.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's *Motion to Compel Arbitration and Stay Case* **(Rec. Doc. 5)** is **GRANTED**.

**IT IS FURTHER ORDERED** that the Clerk of Court shall stay and administratively close this case, to be reopened, if necessary, after arbitration is completed.

New Orleans, Louisiana, this 21st day of August, 2025.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE

8